Filed 1/11/23 P. v. Benavidez CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073092 |
| v. | (Super.Ct.No. INF065236) |
| FERNANDO ANTONIO BENAVIDEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Reversed.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorney Generals, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland and Julie L. Garland, Assistant Attorney Generals, Christopher P. Beesley, Eric A. Swenson, Allison Acosta and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Fernando Antonio Benavidez appeals from a trial court's order summarily denying defendant's petition for relief under Penal Code[1] section 1170.95[2]. For the reasons set forth *post*, we find that defendant made a prima facie showing that he falls within the provisions of section 1172.6, and is therefore entitled to a remand for further proceedings on his petition.

## FACTUAL AND PROCEDURAL HISTORY

A.      PROCEDURAL HISTORY

On January 3, 2012, a first amended information charged defendant with murder under section 187, subdivision (a) (count 1). The information also charged a codefendant with dissuading a witness under section 136.1, subdivision (c)(1) (count 2). As to count 1, the information alleged that the murder was committed while defendant and his codefendants were engaged in the commission of a robbery under section 190.2, subdivision (a)(17)(A).

After a jury trial, on April 3, 2012, the jury found defendant guilty as charged. The jury also found true the special circumstance allegation that the murder was committed during the course of a robbery.

On June 22, 2012, the trial court sentenced defendant to life without the possibility of parole.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] Section 1170.95 was renumbered effective June 30, 2022, to section 1172.6. (Stats. 2022, c. 58 (A.B. 200), § 100, eff. June 30, 2022.) We will refer to the new numbering and current version in this opinion.

Defendant appealed and we modified several fines but otherwise affirmed the judgment. (*People v. Dunson et al.* (Feb. 26, 2015, E056565 [nonpub. opn.].).)

On April 5, 2019, defendant filed a petition for resentencing under section 1172.6. On April 26, 2019, the People filed their response. Thereafter, defendant's appointed counsel filed a reply brief. Counsel represented defendant at the hearing on May 31, 2019. At the hearing, the trial court summarily denied the petition on the ground that the petition failed to set forth a prima facie case for relief.

On June 11, 2019, defendant filed a timely notice of appeal. In an unpublished opinion filed on October 16, 2020, we affirmed the denial of the petition based on the state of the law at the time.

Defendant filed a petition for review, which was granted. On September 28, 2022, the California Supreme Court transferred the matter back to this court with instructions to vacate our previous decision and reconsider the cause in light of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*) and *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*). In *Strong,* the California Supreme Court found that felony murder special-circumstance findings issued by a jury before the decisions of *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), which clarified the terms "major participant" and "reckless indifference to human life" in the special-circumstance statute, do not preclude a defendant from making out a prima facie case for resentencing of a felony-murder conviction, even if the trial evidence would have been sufficient to support the findings under *Banks* and *Clark*. In *Lewis*, at page 966, the California Supreme Court found that under section 1172.6, a defendant who files a petition for resentencing in the

3

trial court is entitled to appointment of counsel and for counsel to have the opportunity to submit briefing prior to the trial court's prima facie finding.

We vacated our previous opinion and requested that defendant and the People file supplemental briefs. Defendant in his supplemental briefing requests that this court direct the trial court to issue an order to show cause and hold a hearing pursuant to section 1172.6. In its supplemental brief, the People agree with defendant and concede that remand to the trial court for further proceedings under section 1172.6 is required. We will remand the matter to the trial court for further proceedings.

B.    FACTUAL HISTORY[3]

In November 2007, Robert Dunson and his sister, Jackie Dunson, lived in the ground floor studio apartment of a two-story duplex in Indio. Rogelio Zuniga and his girlfriend, M.J., lived in the vacant, second floor apartment above the Dunsons' apartment.

Defendant was Jackie's "on-again off-again" boyfriend and visited at the apartment occasionally, but did not stay there. Jackie was a prostitute, and defendant would bring her clients, or "dates."

In November 2007, Robert, Jackie, M.J. and Zuniga hung out together and smoked methamphetamine every day in the Dunsons' apartment. Defendant would join them a couple of times a week.

---

[3] The factual history is taken from our opinion in the prior appeal, case No. E056565, which we took judicial notice of by order dated August 22, 2019.

4

On November 25, 2007, M.J., Jackie, Robert, Zuniga and defendant were at the Dunsons' apartment. Defendant offered to find a date for Jackie and bring the date back to the apartment to have sex with Jackie. Robert proposed instead that they would bring a man "back to the apartment, beat his ass, rob him, and take all of his shit." Defendant agreed, as did Jackie. Zuniga said nothing. Defendant left the apartment and M.J. and Zuniga went to the upstairs apartment.

A surveillance videotape from the Spotlight 29 casino showed defendant entering the casino just after midnight during the morning of November 26, 2007. The victim, William Dobbs, entered the casino about 1:15 a.m. He walked around then walked outside; as he waited for the valet to bring his Cadillac Escalade, defendant stood near the doorway outside the casino, watching Dobbs. Dobbs left in the Escalade at 1:46 a.m.

Dobbs returned to the casino about 3:30 a.m. At 3:45 a.m., Dobbs met with defendant inside the casino. They talked briefly and then left together in the Escalade.

At some point that night or early morning, M.J. woke to the voice of a man in the Dunsons' apartment screaming: "Oh, God. Please help me." M.J. described the screaming as "gut wrenching," "like someone is in pain, like they were hurt [and] screaming for someone to help them." She also heard "very loud" sounds of banging on a wall downstairs, "like something pretty heavy slamming up against the wall." Zuniga told M.J. to go back to sleep, which she did.

T.S. was a prostitute who had known Jackie and Robert for approximately 20 years. In November 2007, she was living in a car but she had Jackie's permission to take showers at the Dunsons' apartment. In the predawn hours of November 26, 2007, T.S.

5

walked to the Dunsons' apartment to take a shower. As she approached she saw defendant walking away from the apartment. T.S. testified at the preliminary hearing that it was defendant she saw; however, at trial T.S. testified she had "assumed" it was defendant, but that after "getting [her] mind right" and off drugs, she remembered seeing defendant, immediately before going to the Dunsons' apartment, at a gas station almost two miles away.

As T.S. approached the apartment, she heard Jackie arguing, yelling, and crying. T.S. heard Jackie say, "he was acting stupid," and "[h]e doesn't want to give [the money] to her." A side door to the apartment was ajar. As T.S. passed by that door, she heard Robert yelling loudly and angrily, " '[g]et down, mother fucker' " and "[t]hese better be the right PIN numbers." T.S. watched Robert push a man to his knees. The man appeared to have blood under his chin. Robert then put a plastic bag over the man's head and used duct tape to secure the bag to the man's neck and face. As T.S. began to leave, she heard Robert say: "Come on, mother fucker. We're going for a ride." T.S. then left.

At 4:50 a.m. Jackie attempted to withdraw $500 from an ATM machine using Dobbs's bank card. The attempt was denied because it exceeded the daily withdrawal limit for the account. She then successfully withdrew $200 from the ATM. An attempt to obtain an additional $200 was denied. During the evening of November 26, 2007, three unsuccessful attempts to withdraw money with Dobbs's bank card were made.

M.J. went downstairs to the Dunsons' apartment the morning of November 27, where she saw Robert kneeling in a corner of the living room scrubbing the walls with bleach and pulling up carpet. He gave M.J. a bank card and a piece of paper with a PIN

6

number written on it and told her to pull out as much money as she could and bring it back to him, and she would get "a little bit of money in return for going." M.J. looked at Zuniga; Zuniga said, "let's go."

Between 10:26 a.m. and 11:39 a.m. on November 27, M.J. and Zuniga used Dobbs's bank card to retrieve approximately $1,000 from different ATMs. M.J. put $300, one of the transaction receipts, the bank card, and the PIN number in a pocket; she ripped up the other transaction receipts and put the rest of the cash in her bra. When she and Zuniga returned to the Dunsons' apartment, she gave the receipt, $300, the bank card, and the PIN number to Robert. M.J. kept the remaining cash.

Dobbs's body was found on November 27 two miles from the Spotlight 29 casino; he had a black bag attached to his neck with red tape. A Spotlight 29 valet parking pass was in his pocket. He had been stabbed with a sharp instrument 14 times, mostly on his face and neck. His internal and external jugular veins and carotid artery were severed and his trachea was also severed, which would have made it impossible for him to breathe. He had bruises and abrasions on his face and scalp, and signs of blunt force trauma to his chest. He had four broken ribs, which caused ruptures to his liver and lung. The forensic pathologist who performed the autopsy on Dobbs described the injuries as "brutal," and said it "looked like perhaps some injuries were inflicted for the purpose of torture" and for "causing pain."

## DISCUSSION

In light of the decisions in *Strong*, *supra*, 13 Cal.5th 698 and *Lewis*, *supra*, 11 Cal.5th 952, remand to the trial court for further proceedings is necessary.

SB 1437 became effective January 1, 2019. "[SB 1437] modified California's felony murder rule and natural and probable consequences doctrine to ensure murder liability is not imposed on someone unless they were the actual killer, acted with the intent to kill, or acted as a major participant in the underlying felony and with reckless indifference to human life." (*People v. Cervantes* (2020) 46 Cal.App.5th 213, 220.) As relevant here, SB 1437 added section 189, subdivision (e), which provides, "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).) Section 190.2, subdivision (d) provides, "Notwithstanding subdivision (c), every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4."

SB 1437 also created a process through which convicted persons can seek resentencing if they could no longer be convicted under the reformed homicide law. (§ 1172.6, subd. (a).) Section 1172.6, subdivision (a), provides in part, "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts." Section 1172.6, subdivision (c), provides, "Within 60 days after service of a petition . . . , the prosecutor shall file and serve a response. The petitioner may file and serve a reply within 30 days after the prosecutor's response is served. These deadlines shall be extended for good cause. After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." If the petitioner makes a prima facie showing he is eligible for relief under section 1172.6, the court shall hold an evidentiary hearing. (§ 1172.6, subds. (c) & (d)(1).) At this hearing, either party may present new evidence and the prosecution bears the burden of proving the petitioner could still be convicted beyond a reasonable doubt. (§ 1172.6, subd. (d)(3).)

In *Lewis*, *supra*, 11 Cal.5th 952, our Supreme Court found that former section 1172.6 entitled a defendant to have appointment of counsel after filing a proper petition and was entitled to have the opportunity for counsel to file briefing in response to any opposition filed by the People before the trial court makes its prima facie determination. (*Id.* at pp. 961-972.)  As noted *ante*, this has been codified in section 1172.6, subdivision (c).  The *Lewis* Court also held that a superior court's failure to appoint counsel to represent a petitioner or to allow for briefing when assessing whether a defendant has made a prima facie showing of entitlement to relief is state law error, reviewable for prejudice under *People v. Watson* (1956) 46 Cal.2d 818.  (*Lewis*, at pp. 958, 973-974.)  The Court stated:  "More specifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing." ' "  (*Id.* at p. 974.)

In this case, the trial court summarily denied defendant's petition for resentencing after the prosecutor argued that there was a true finding on the special circumstances at trial.  The trial court stated that "this is a case where there was a true finding and a special circumstance that required the jury to find that the defendant was a major participant with reckless indifference.  It was upheld on appeal.  They found sufficient evidence of major participant with reckless indifference."

In fact, the jury did find defendant guilty of murder under section 187, subdivision (a), and found true the allegation that the murder was committed while defendant and his cohorts were engaged in the commission of a robbery under section 190.2, subdivision

10

(a)(17)(A)).  However, the jury's special circumstances finding was made in 2012, pre-*Banks* and *Clark*.  *Banks* was decided in 2015 and *Clark* was decided in 2016.

In *Strong*, the California Supreme Court resolved a split of the Courts of Appeal as to whether a special circumstance finding reached prior to *Banks* and *Clark* precluded relief under section 1172.6.  *Banks* and *Clark* "substantially clarified the law" regarding what it means to be a major participant who acts with reckless indifference to human life for the purposes of the special circumstance statute.  (*Strong*, *supra*, 13 Cal.5th at pp. 706-707, 721.)  The *Strong* court concluded that where a defendant's "case was tried before both *Banks* and *Clark*, the special circumstance findings do not preclude him [or her] from making out a prima facie case for resentencing under section 1172.6."  (*Ibid.*)  A court "err[s] in concluding otherwise."  (*Ibid.*)

In this case, the robbery-murder special circumstance finding predated *Banks* and *Clark*.  Hence, the special circumstance finding did not preclude defendant from "making out a prima facie case for resentencing under section 1172.6."  (*Strong*, *supra*, 13 Cal.5th at p. 721.)  The trial court erred by summarily denying the petition relying on the special circumstance finding.

In addition, *Strong* also held that a defendant is not required to first pursue habeas relief to set aside the special circumstance finding, but may challenge the "reckless indifference" and "major participant" elements through the section 1172.6 proceeding itself.  (*Strong*, *supra*, 13 Cal.5th at p. 713.)

Accordingly, we must remand the matter for the trial court to consider defendant's petition in light of *Strong*, as nothing in the record demonstrates that defendant is

11

ineligible for relief as a matter of law.  The trial court shall give defendant's counsel an opportunity to provide briefing, determine whether defendant has made out a prima facie case for relief, and, to the extent necessary, issue an order to show cause and conduct an evidentiary hearing.  (§ 1172.6, subds. (c), (d)(1) & (3).)

## DISPOSITION

The trial court's order denying the petition is reversed and the matter is remanded for further proceedings pursuant to section 1172.6, as set forth in this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

FIELDS
J.

12